MICHAEL A. HARTSELL
PO Box 3182
Vista, California 92085
(760) 525-8233

In Pro Per

**FILED**

MAY 0 6 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____TM_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL A. HARTSELL

         Plaintiff,

v.

COUNTY OF SAN DIEGO;
SAN DIEGO COUNTY DEPUTY
SHERIFF TRENTON STROH;
DOES 1-15,

         Defendants.

Case No. '16 CV 1094 LAB JMA

COMPLAINT FOR DAMAGES;
DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, in pro per, and hereby alleges:

This lawsuit for money damages is brought pursuant to the provisions of 42 U.S.C. § 1983 due to violations by Defendants of Plaintiff's constitutional rights under the Fourth Amendment to the U.S. Constitution. Supplemental claims are also brought pursuant to California law.

## JURISDICTION

1. Federal jurisdiction is founded upon the existence of a federal question, the Civil Rights Act, 42 U.S.C. § 1983 and lies under 28 U.S.C. § 1331. The remaining causes of action arise under the supplemental jurisdiction of this Court and lie under 28 U.S.C. § 167.

## VENUE

2. Venue in the Southern District of California is proper because the injuries to Plaintiff occurred herein and further because the Defendants are believed to reside in said district.

## PARTIES

## PARTIES

3. Plaintiff MICHAEL A. HARTSELL, (hereinafter "Plaintiff") was at all material times mentioned herein was a resident of the City of Vista, in the State of California.

4. The COUNTY OF SAN DIEGO ("the COUNTY"), is and was at all times mentioned herein a political sub-division of the State of California and is the employer of Defendants SAN DIEGO COUNTY DEPUTY SHERIFF STROH and DOES 1-15, who performed all of the herein alleged acts for, and in the name of, the COUNTY.

5. Plaintiff alleges that all the Defendant Officers acted in their individual capacities, in the course and scope of their employment, and under color of law.

6. Regarding all actions and causes of action herein alleged and stated, all defendants (including all DOE defendants) violated rights held by Plaintiff which were clearly established and which they had a mandatory duty to uphold. No reasonable official similarly situated to any of the Defendants could have believed that his/her conduct was lawful or within the bounds of reasonable discretion. All Defendant Officers, including all individual DOE defendants, thus lack immunity from suit or liability. This extends both to statutorily created immunity and to the judicially created doctrine of "qualified immunity".

7. Prior to the filing of this complaint and on or about November 5, 2015, Plaintiff filed a written claim with the COUNTY OF SAN DIEGO for the injuries alleged herein as required by, inter alia, California Government Code §§ 905, 905.2 and 945.4. On or about December 18, 2015, his claim was formally denied in writing. The administrative claims process need not be followed as a prerequisite to bringing suit as to the claims brought under 42 U.S.C. § 1983. Patsy v. Board of Regents, 457 U.S. 496 (1982); Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983).

8. At all material times mentioned herein, Defendants SAN DIEGO COUNTY

1   DEPUTY SHERIFF TRENTON STROH ("DEPUTY STROH") and DOES

2   1-15, (collectively referred to as the Defendant Officers) were duly constituted

3   law enforcement officers employed by the SAN DIEGO COUNTY SHERIFF'S

4   DEPARTMENT and are charged with administering and maintaining laws in the

5   jurisdiction of the COUNTY OF SAN DIEGO and State of California.  Thus,

6   they were the agents, servants, and/or employees of the COUNTY OF SAN

7   DIEGO and in doing the acts herein alleged, were acting within the course and

8   scope of their agency and/or employment, and with the permission, consent and

9   authority of the COUNTY OF SAN DIEGO.  The acts of the Defendants were

10   also done under the color and pretense of the statutes, ordinances, regulations,

11   customs and usages of the State of California.

12                    **GENERAL ALLEGATIONS**

13   9.   On May 21, 2015 at approximately 5:00 am, a federal search warrant was

14        executed at 2915 Hutchinson Street, Vista, California by a DEA organized task

15        force consisting of federal, state and local law enforcement officers, including

16        the COUNTY OF SAN DIEGO Sheriff's Department.  This address is

17        HARTSELL's single family home.  A federal arrest warrant for HARTSELL

18        was also executed on the same day.

19   10.  When the agents arrived, they encountered a locked metal gate approximately

20        half way up the driveway to the residence.  Upon arrival, a motion light came on

21        as agents disabled a surveillance camera above the gate and began trying to cut

22        the locks on the gate. Two padlocks were cut, and the right side of the gate was

23        opened, but the agents were unable to open the left side of the gate.

24   11.  After approximately 30-45 seconds of trying to get through the gate, agents saw

25        2 men standing at the top of the driveway just outside of the garage to the

26        residence.   The warrant team was told that there was a "compromise" as the 2

27        men began retreating back towards the residence. An agent called the remaining

28        entry team to the gate.  They mustered up and began walking towards the

                                       3

residence.  HARTSELL was NOT one of these two men, and does not admit
there were 2 men, although a man named Tony Osterholt, lives in a motor home
parked on the driveway, and he could have been outside.

12.  HARTSELL was inside his bedroom with his mechanic named Mike Ferguson.
They had just spent all night completing the repair of a transmission in
HARTSELL's Dodge Ram truck, which was parked in the garage.  The two of
them saw, on the surveillance camera, men mustering outside the house.  When
Mike said "it's the cops," both HARTSELL and Mike ran out the back door.  No
perimeter had yet been set up.

13.  The agents assert that the team was advised that there was a "compromise" and
two male subjects had observed them. Upon arrival at the residence, an agent
observed the garage door was open, and he instructed the team to enter the house
through the garage.  As the entry team entered the garage it was allegedly
announced multiple times, "Sheriff's Department with a search warrant
demanding entry!"  HARTSELL was gone and didn't clearly hear anything but
indecipherable yelling  because he was too far away.

14.  After HARTSELL ran out the back door, he climbed and jumped over an eight
foot wooden fence and landed in a yard where Ferguson was waiting.  There was
a second fence, which Ferguson climbed, and ran away.  HARTSELL could not
climb that particular fence, so he looked for another exit.  The neighbor woke up,
HARTSELL ran, climbed over the fence where it was more accessible, but upon
landing hit his head.  He crawled under a bush and passed out.

15.  Meanwhile an agent breached the door from the garage into the residence and
entered. Plaintiff's adult daughter was located in her bedroom and detained.
Noone else was home.  An agent announced via radio that he believed the 2 men
had run out the back door and that one of the 2 was HARTSELL.

16.  Several Sheriff's deputies were instructed to take two vehicles to set up a
perimeter in an attempt to capture and arrest HARTSELL. The deputies did so,

4

and requested additional assistance from patrol deputies with the Sheriff's Vista Sub-station, and specifically called for a K- 9 deputy from the Sheriff's Valley Center Station.

17.   DEPUTY STROH arrived on scene with his K-9 partner "Bubo" after an unknown period of time.  After some period of searching, neighbors directed the deputies where they had seen HARTSELL run through their property and where HARTSELL was last seen. Deputy STROH and Bubo, along with several other deputies, began tracking where they believed HARTSELL had gone over a fence.

18.   STROH and other deputies claim they continued to give several warnings that they had a K-9 and he would bite if a subject was located.  HARTSELL eventually regained consciousness as he heard the command "show me your hands."  He complied by extending his arms straight in front of him. HARTSELL looked to his left and saw Deputy STROH holding Bubo on a leash.   Agents again commanded "show me your hands" but he had already complied by extending his arms straight in front of him.

19.   The next thing that happened was that STROH let Bubo off the leash without warning.  Bubo ran to where HARTSELL was laying on the ground and bit HARTSELL's extended left arm several times.  DEPUTY STROH has admitted that HARTSELL eventually showed his hands, but when this occurred is in substantial dispute.   HARTSELL immediately began screaming in pain and the Deputy told him to crawl out toward him.  HARTSELL asked that the dog be called off, because any movement caused Bubo to bite harder.  HARTSELL was forced to crawl toward the Deputy with Bubo clamped toward his left arm. When HARTSELL got adjacent to the Deputy, Bubo ignored commands to release for at least 30 seconds.  Eventually, Bubo was forced to let go and HARTSELL was placed under arrest, in handcuffs behind his back, with a severe bleeding injury to his arm. The Vista Fire Department was called.

HARTSELL was lifted to his feet and put in the back of a police car. He was treated at the scene and transported by Sheriff's Deputies in a police car to Tri-City Hospital for further treatment, where state and federal agents argued over who would be responsible for payment of the medical bills. HARTSELL's request for an ambulance was denied. He remained in handcuffs until he arrived at the hospital.

20. Upon their return to the house, Deputies were overheard bragging that they had "f***ed (HARTSELL) up good."

21. Doctors at Tri-City hospital diagnosed HARTSELL with a "severe" upper left arm (left axilla and left shoulder" multiple deep tissue injury wounds requiring two incisions and drainages with skin grafting and "negative-pressure wound therapy." Due to his diminished pulse, there was concern that his brachial artery had been lacerated or punctured. A clot was identified and surgically treated.

22. He was discharged from Tri-City after eight days on May 29, 2015. He was taken to MCC and booked, and seen by a doctor and rejected his booking for medical reasons. He was taken back to Tri-City and readmitted and was subsequently discharged on June 24, 2015. He was transferred back to MCC and booked. For unknown reasons he was not timely arraigned as required by FRCrP 5. The day he was released on bail, he was readmitted to Tri-City on July 29, 2015 after he developed a left arm abscess which required multiple debridements, further "negative-pressure wound therapy" and additional skin grafts. He was discharged from Tri-City on August 2, 2015.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**UNREASONABLE SEIZURE (EXCESSIVE FORCE)**
**AGAINST THE DEFENDANT OFFICERS**

23. Plaintiff refers to and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

24. A reasonably prudent officer knows that a person cannot be subjected to

1   excessive force.

2   25.   The force in this case was excessive under the applicable legal standard: "First,

3   (the Court) must assess the severity of the intrusion on the individual's Fourth

4   Amendment rights by evaluating the type and amount of force inflicted."

5   "Second, (the Court) evaluates the government's interest in the use of force."

6   "Finally, (the Court) balances the gravity of the intrusion on the individual

7   against the government's need for that intrusion."  Glenn v. Washington County,

8   673 F.3d 864, 871 (9th Cir. 2011)(citing Graham v. Connor, 490 U.S. 386,

9   (1989).)  The Court must assess not only the amount of force used (and the

10   severity of the resulting injury), but also type of force used and the potential

11   harm it may cause.  Lowry v. City of San Diego, 2016 WL 1273183 *4 (9th Cir.

12   4/1/16)

13   26.   The Ninth Circuit has repeatedly held that deploying a police dog to effectuate

14   an arrest is a "severe" use of force. See Smith v. City of Hemet, 394 F.3d 689,

15   701–02 (9th Cir. 2005)(en banc)(noting that use of a police dog is "the most

16   severe force authorized short of deadly force"); Chew v. Gates, 27 F.3d 1432,

17   1441 (9th Cir. 1994)(holding that the use of a police dog was a "severe" use of

18   force); Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003)(concluding

19   that use of a police dog was a "serious" intrusion on the plaintiff's Fourth

20   Amendment interests).

21   27.   Further, the handcuffing after injury "substantially aggravated the intrusion and

22   aggressiveness" of the arrest/detention.  See U.S. v. Bautista, 684 F.2d 1286,

23   1289 (9th Cir.1982).   The Ninth Circuit has held that excessively tight

24   handcuffing can constitute a Fourth Amendment violation, where a person was

25   demonstrably injured by the handcuffs or their complaints about the handcuffs

26   being too tight were ignored by the officers. See e.g., Wall v. County of Orange,

27   364 F.3d 1107, 1109-12 (9th Cir. 2004); LaLonde v. County of Riverside, 204

28   F.3d 947, 952, 960 (9th Cir. 2000)(arrestee complained to officer who refused to

loosen handcuffs); <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1434-36 (9th Cir. 1993)(arrestee's wrists were discolored and officer ignored his complaint); <u>Hupp v. City of Walnut Creek</u>, 389 F.Supp.2d 1229, 1232-33  (N.D. Cal. 2005).

28.   In committing the acts alleged herein, the Defendants violated, without any defense, Plaintiff's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from the use of unreasonable and excessive force, in that the force applied to arrest/detain Plaintiff was in contravention of constitutional and statutory duty, was in excess of any force required to address the circumstances, was grossly out of proportion to any need for force, was not employed in good faith, and was intended and substantially certain to cause serious bodily injury.   These rights were clearly established at the time.  For these reasons, Plaintiff is entitled to recover damages pursuant to Title 42 U.S.C. §1983, et seq.

29.   By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to Plaintiff's damages in an amount to be proven at trial.

30.   As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled to general and special damages from the Defendants in an amount to be proven at trial.

31.   In doing the acts alleged herein the Defendants acted maliciously and with reckless and callous disregard for the rights and feelings of Plaintiff and by reason thereof Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**NEGLIGENCE, UNDER CALIFORNIA LAW**
**ALL DEFENDANTS**

32.   Plaintiff refers to and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

33.   By the acts alleged above, the Defendant Officers were negligent and breached

their duty of due care owed to Plaintiff, thereby causing the injuries and severe emotional distress as described in the aforementioned Factual Allegations. Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

34. By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to Plaintiff's damages in an amount to be proven at trial.

35. As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled to general and special damages from the Defendants in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### BATTERY UNDER CALIFORNIA LAW
### ALL DEFENDANTS

36. Plaintiff refers to and incorporates by reference Paragraphs 1 through 22 as though fully set forth herein.

37. By reason of the intentional acts of Defendants, Plaintiff was unlawfully subjected to excessive force, assault and battery. In committing the acts alleged herein, the Defendant Officers acted with extreme, precipitous, and unprovoked force which was substantially certain to cause, and did cause physical and emotional injury to Plaintiff herein.

38. A reasonably prudent officer would have known that the use of any force on the person of Plaintiff, let alone excessive force, was completely unwarranted and unlawful.

39. By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to Plaintiff's damages in an amount to be proven at trial.

40. As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled to general and special damages from the Defendants in an amount to be proven at trial.

41. In doing the acts alleged herein the Defendants acted maliciously and with reckless and callous disregard for the rights and feelings of Plaintiff and by reason thereof Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general and compensatory damages against the Defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against the Defendant Officers in an amount to be proven at trial;

3. For such declaratory or injunctive relief as may be appropriate;

4. For costs of suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988; and

5. For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims for relief.

Respectfully Submitted,

Dated: May 5, 2016

MICHAEL HARTSELL
Plaintiff in Pro Per