UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. HARTSELL,<br><br>                              Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br>TRENTON STROH, and<br>DOES 1-15,<br><br>                              Defendants. | Case No.:  16cv1094-LAB-LL<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 45]** |

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) of the United States District Court for the Southern District of California. Currently before the Court is Defendants' Motion for Summary Judgment [ECF No. 45 ("Mot.")], Plaintiff's Opposition [ECF No. 55 ("Opp.")], and Defendants' Reply [ECF No. 58 ("Reply")]. For the following reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

On May 5, 2016, Plaintiff Michael A. Hartsell, filed a complaint against Defendants County of San Diego ("County"), Deputy Sheriff Trenton Stroh ("Deputy

Stroh"), and Does 1-15 alleging claims for excessive force under the Civil Rights Act, 42 U.S.C. § 1983 and battery and negligence under California state law.  ECF No. 1.

On October 5, 2018, Defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, along with a Memorandum of Points and Authorities [ECF No. 45], a Notice of Lodgment with twenty-three supporting exhibits to Defendants' Motion [ECF No. 45-2], a Request for Judicial Notice [ECF No. 45-3], and the Declaration of Robert A. Ortiz [ECF No. 45-4].  On the same day, Defendants filed an Ex Parte Motion to File Summary Judgment Exhibits Under Seal requesting an order from the Court to seal certain exhibits in support of their Motion for Summary Judgment.  ECF No. 43.

On October 11, 2018, the Court denied Defendants' Ex Parte Motion To File Summary Judgment Exhibits Under Seal.  ECF No. 46.  In response, on October 19, 2018, Defendants' filed an Amended Notice of Lodgment filing the supporting exhibits publicly.  ECF No. 48.

On December 3, 2018, Plaintiff filed a Response to Defendant's Motion for Summary Judgment.  ECF No. 55.  The response included the Declaration of Keith H. Rutman [ECF No. 55-1] and twenty-eight supporting exhibits.  On the same day, Plaintiff filed evidentiary objections to certain of Defendants' lodged exhibits.  ECF No. 56.

On December 10, 2018, the Parties filed a Joint Statement of Undisputed Facts. ECF No. 57 ("Joint Statement").  On the same day, Defendants filed a Reply to Plaintiff's Response [ECF No. 58], including Defendants' evidentiary objections to certain of Plaintiff's lodged exhibits [ECF No. 58-1].

## FACTUAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiff and are undisputed unless otherwise indicated.

On May 21, 2015, a multi-agency, DEA-organized narcotics task force executed a search and arrest warrant for Plaintiff at his home located at 2915 Hutchinson Street in Vista, California ("Residence").   Joint Statement at ¶ 1, Mot., Ex. B at 4.   Prior to

2

traveling to the Residence, task force agents were briefed and informed Plaintiff was a convicted felon with a lengthy criminal history. Joint Statement at ¶ 2.

At the time, Plaintiff's criminal history included priors for: (1) 11378 H&S – possession of controlled substance for sales (meth); (2) 11351 H&S – possession of controlled substance for sales (heroin); (3) 11377 H&S – possession of a controlled substance; and (4) multiple fraud-related charges. Id. at ¶ 3. Plaintiff had no prior convictions involving violent crimes or weapon possession. Id. at ¶ 4. The task force's operational plan listed: (1) "Unknown" as to whether there were weapons at the Residence; and (2) "No" as to whether Plaintiff was known for, or suspected of, violence. Id. at ¶¶ 5-6.

As the task force's agents approached the driveway leading to the Residence, they encountered a locked gate and surveillance camera. Id. at ¶ 7. At the time, Plaintiff was inside his bedroom with a friend, Michael Ferguson, and observed the task force agents on surveillance monitors trying to gain entry through the gate. Id. at ¶ 8. Mr. Ferguson stated out loud: "it's the cops," and both Plaintiff and Mr. Ferguson fled the Residence through the back door of the bedroom. Id. at ¶ 9. It was approaching dawn when Plaintiff fled into the surrounding rural neighborhood. Id. at ¶ 10. Plaintiff fled because he was afraid of being robbed by home invaders or arrested by the police. Id. at ¶ 12.

The task force agents at the gate observed two men run and announced over the radio that the operation was compromised. Id. at ¶ 11. Plaintiff was identified as one of the fleeing men. Id. at ¶ 11. Plaintiff and Mr. Ferguson jumped multiple fences and ran through neighbors' yards while fleeing. Id. at ¶ 13. During this time, Plaintiff's neighbor came out of his house and started yelling at Plaintiff. Id. at ¶ 14. The neighbor identified Plaintiff to the pursuing deputies as heavyset and wearing a tanktop and underwear. Id. Plaintiff then fell while jumping a fence and struck his head on the ground. Id. at ¶ 15. After striking his head, Plaintiff crawled five to fifteen feet inside of thick bushes and lost consciousness. Id.

The task force agents established a perimeter to locate and apprehend the two fleeing suspects. Id. at ¶ 16. The agents radioed for additional deputies, including canine deputies from the Sheriff's Department's Vista and Valley Center Stations. Id. at ¶ 17. Deputy Branden Carlos was the first canine handler to arrive. Id. at ¶ 18. Prior to beginning his search with his canine partner, Arras, Deputy Carlos asserts he made two canine announcements from the location where Plaintiff was last seen, near the area Plaintiff was ultimately found. Id. at ¶ 19.

Deputy Stroh then arrived with his canine partner, Bubo. Id. at ¶ 23. As a result, Deputy Carlos discontinued his search so that Deputy Stroh could conduct a search with Bubo. Id. Bubo is a Belgian Malinois who was a patrol and tracking canine for the Sheriff's Department. Id. at ¶ 21. Patrol and tracking canines used by the Sheriff's Department are trained to bite, hold and to release upon being given an unique verbal command. Id.

Deputy Stroh was briefed by Deputy Carlos and Agent Harvey, who advised him that: (1) two male suspects had fled the Residence during the execution of the arrest warrant; (2) several canine announcements were made from the location where both suspects were last seen; (3) Plaintiff was wanted on a felony arrest warrant for drugs; (4) Plaintiff had an extensive criminal history; and (5) it was unknown whether either of the suspects were armed. Id. at ¶ 24.

Deputy Stroh began a field search with Bubo, who was on a thirty-foot leash, near Hutchinson Street and Harris Drive. Id. at ¶ 27. Deputy Stroh had at least two cover deputies. Id. at ¶ 28. After searching the area, Bubo pulled Deputy Stroh towards an area covered by bushes near where the search initially began. Id. at ¶ 29. Based on Bubo's change in behavior, Deputy Stroh believed a suspect was concealed inside the bushes. Id. When Deputy Stroh peered inside the bushes, he saw a man matching Plaintiff's description on his stomach. Id. at ¶ 30.

Deputy Stroh announced: "Sheriff's Department with a canine. Show me your hands, or you will be bit!" Id. at ¶ 31. Bubo ultimately entered the bushes to engage

4

Plaintiff and contacted and bit onto Plaintiff's upper left arm. <u>Id.</u> at ¶ 32. For the duration of the incident: (1) Bubo remained on his thirty-foot leash; and (2) Deputy Carlos had his Glock .22 pointed at Plaintiff. <u>Id.</u> at ¶¶ 33-34.

As Bubo was biting and holding Plaintiff, Deputy Stroh again ordered Plaintiff to show his hands. <u>Id.</u> at ¶ 35. According to Plaintiff, he complied with this instruction, but was nevertheless ordered to crawl out of the brush with Bubo still engaged. Opp., Ex. 5 at 101:17-102:16. Deputy Stroh asserts he could not physically access Plaintiff or Bubo and Plaintiff had still not been searched for weapons. <u>Id.</u> at ¶ 36. Plaintiff crawled approximately five to fifteen feet to the edge of the bushes, which took approximately 30-45 seconds, before Bubo was removed. <u>Id.</u> at ¶ 40. Plaintiff made no attempt to flee the brush. <u>Id.</u> at ¶ 38.

Plaintiff was arrested, treated by medical personnel on scene, and transported to Tri-City Medical Center for further treatment. <u>Id.</u> at ¶ 44. No weapons were recovered from the scene or Plaintiff's person. <u>Id.</u> at ¶ 43. Plaintiff sustained deep tissue wounds to his left arm that required surgery and complications requiring additional surgeries. <u>Id.</u> at ¶ 45.

On or about February 18, 2016, Plaintiff pled guilty to Conspiracy to Distribute Methamphetamine (21 U.S.C. §§ 841(a)(1), 846) and was sentenced to seventy-seven months in federal prison. <u>Id.</u> at ¶ 46. Plaintiff is currently incarcerated at the Federal Correctional Institution in Lompoc, CA. <u>Id.</u> at ¶ 47.

## **LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material when, under the governing substantive law, it could affect the outcome of the case." <u>Brown v. City of San Diego</u>, 2018 U.S. Dist. LEXIS 185838, at *6 (S.D. Cal. Oct. 30, 2018) (citations omitted). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

16cv1094-LAB-LL

The moving party has the initial burden of demonstrating that summary judgment is proper. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." <u>Jones v. Williams</u>, 791 F.3d 1023, 1030-31 (9th Cir. 2015).

The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. <u>Celotex</u>, 477 U.S. at 322-24. The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citation omitted).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Id</u>. at 255 (citation omitted). "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1158 (9th Cir. 1999) (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987)).

<strong>DISCUSSION</strong>

## I. Defendants' Request for Judicial Notice and the Parties' Evidentiary Objections

As an initial matter, the Court addresses Defendants' Request for Judicial Notice [ECF No. 45-3] and the evidentiary objections each party lodged to the exhibits submitted by the other in support of their briefing [ECF Nos. 56 and 58-1].

### A. Defendants' Request for Judicial Notice

Defendants request the Court take judicial notice of Exhibits C (May 20, 2015 arrest warrant), F (February 28, 2016 Criminal Plea Agreement) and V (May 26, 2016

6

Criminal Judgment). ECF No. 45-3. Plaintiff does not respond to this request, but does lodge separate evidentiary objections against Exhibits F and V that the Court addresses below.

Under Federal Rule of Civil Procedure 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Because these court documents are appropriate subjects for judicial notice, the Court **GRANTS** Defendants' request. See Lightner v. Cty. of Contra Costa, 2010 U.S. Dist. LEXIS 29736, at *2-3 n.1 (N.D. Cal. Mar. 29, 2010).

## B. <u>Plaintiff's Evidentiary Objections</u>

Plaintiff objects to three groups of exhibits submitted by Defendants: (1) officer reports detailing the execution of Plaintiff's arrest warrant; (2) Plaintiff's Plea Agreement and Criminal Judgment; and (3) photographs of the incident area. See ECF No. 56.

### 1. <u>Investigation and Incident Reports</u>

Plaintiff objects to Defendants' Exhibits I (May 26, 2015 Investigation Report, Joseph Kempton), J (May 21, 2015 Investigation Report, Kenneth Harvey), R (May 21, 2015 Incident Report, Trenton Stroh), and W (May 21, 2015 Officer Report, Branden Carlos) on the grounds that they are "[r]ecords prepared in anticipation of litigation" and inadmissible hearsay. ECF No. 56 at 1. Specifically, Plaintiff argues it is a "general rule" that "police reports are not admissible for the truth of the matter because they are made in contemplation of litigation." Id..

"[A] party does not necessarily have to produce evidence in a form that would be admissible at trial" to survive summary judgment. See Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001). Rather, "Rule 56[(c)] requires only that evidence 'would be admissible', not that it presently be admissible." Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006). Thus, "[t]he focus is on the admissibility

of the evidence's contents, not its form." <u>Estate of Hernandez-Rojas ex rel. Hernandez v. United States</u>, 62 F. Supp. 3d 1169, 1174 (S.D. Cal. 2014) (citations omitted).

Here, the contents of the reports may be presented in an admissible form at trial. For example, the authors of the reports could testify as to their contents based on their personal knowledge. <u>See</u> <u>Lawrence v. City & Cty. of S.F.</u>, 258 F. Supp. 3d 977, 986 (N.D. Cal. 2017) (overruling objections to admissibility of police reports on hearsay grounds at summary judgment stage). For these reasons, the Court will consider them at the summary judgment stage and therefore **OVERRULES** Plaintiff's objections to Defendants' Exhibits I, J, R and W.

### 2. Plea Agreement/Criminal Judgment

Plaintiff objects to Defendants' Exhibits F (February 28, 2016 Criminal Plea Agreement) and V (May 26, 2016 Criminal Judgment) on the grounds that they are of minimal relevance. ECF No. 56 at 3. To the extent this is true, this objection is unnecessary. "A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant." <u>Burch</u>, 433 F. Supp. 2d at 1119. Plaintiff "should simply argue that the facts are not material" rather than submit objections that are "duplicative of the summary judgment standard itself." <u>Id</u>.

For these reasons, the Court **OVERRULES** Plaintiff's objections to Defendants' Exhibits F and V.

### 3. Photographs of the Area of Incident

Plaintiff objects to Defendants' Exhibit S (three photographs showing the area of incident) for "complete lack of foundation" that the "area depicted" at the time of the photograph "was substantially the same as the time of the incident." ECF No. 56 at 3.

Here, Plaintiff does not challenge the authenticity of the photograph, only its accuracy in depicting the area of incident at the time the arrest warrant was executed. <u>See</u> <u>id.</u> Plaintiff's argument is one of materiality, not admissibility, and therefore redundant. <u>See</u> <u>San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh,</u>

8

Pa., 2018 U.S. Dist. LEXIS 168284, at *14 (S.D. Cal. Sep. 28, 2018) ("Objections such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself.") (quoting All Star Seed v. Nationwide Agribusiness Ins. Co., 2014 U.S. Dist. LEXIS 44798, at *44 (S.D. Cal. Mar. 30, 2014) (citing Burch, 433 F. Supp. 2d at 1119-20)).

For these reasons, the Court **OVERRULES** Plaintiff's objections to Defendants' Exhibit S.

### C. Defendants' Evidentiary Objections

Defendants object to two groups of exhibits submitted by Plaintiff: (1) Plaintiff's expert reports; and (2) canine attack videos and a color photograph of a canine jaw. See ECF No. 58-1.

### 1. Expert Reports

Defendants object to Exhibits 10 (Expert Report of Ernie Burwell) and 11 (Rebuttal Expert Report of Ernie Burwell) because they are signed, but not signed under penalty of perjury. ECF No. 58-1 at 2-3. Defendants are correct that Plaintiff's expert reports fail to meet the evidentiary standards for declarations filed with summary judgment motions. See Estate of Nunez v. Cty. of San Diego, 2018 U.S. Dist. LEXIS 189184, at *9 (S.D. Cal. Nov. 3, 2018),

Notwithstanding this fact, Courts have taken into account unsworn expert reports in summary judgment proceedings when the reports otherwise meet the requirements of Fed. R. Civ. P. 56. See Single Chip Sys. Corp. v. Intermec IP Corp., 2006 U.S. Dist. LEXIS 96527, at *18-20 (S.D. Cal. Nov. 6, 2006); Competitive Techs., Inc. v. Fujitsu Ltd., 333 F. Supp. 2d 858, 863-64 (N.D. Cal. 2004).

Here, having reviewed Plaintiff's expert reports, the Court finds that they meet the requirements of Federal Rule of Civil Procedure 56(c)(4), namely that they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

9

In addition, the Court is mindful that an "expert report submitted in support of an opposition is subject to 'less exacting standards' than a moving party's affidavit." <u>Single Chip Sys. Corp.</u>, 2006 U.S. Dist. LEXIS 96527, at *18; <u>see also</u> <u>Competitive Techs., Inc.</u>, 333 F. Supp. 2d at 863. Under these circumstances, Plaintiff's expert reports may "still assist this Court by alerting the Court to the possibility that factual disputes exist[.]" <u>Single Chip Sys. Corp.</u>, 2006 U.S. Dist. LEXIS 96527, at *20.

For these reasons, the Court **OVERRULES** Defendants' objections to Plaintiff's Exhibits 10 and 11.

### 2. Canine Attack Videos and Color Photograph of Canine Jaw

Defendants object to Exhibits 12 (list of canine attack videos available on YouTube) and 23 (color photograph of a canine jaw) on the grounds of relevance, hearsay, lack of foundation, prejudice, and lack of authentication. ECF No. 58-1 at 3-4. The Court's opinion does not rely on this evidence. Accordingly, the Court does not address Defendant's objections beyond reminding Plaintiff that all evidence at trial must be properly authenticated. <u>See</u> <u>Adams v. Kraft</u>, 828 F. Supp. 2d 1090, 1108 n.5 (N.D. Cal. 2011).

For these reasons, the Court **OVERRULES** Defendants' objections to Plaintiff's Exhibits 12 and 23 as moot.

## II. Deputy Stroh's Claim of Qualified Immunity

In his Complaint, Plaintiff claims Deputy Stroh violated his Fourth Amendment rights by using excessive force during the course of his arrest. ECF No. 1 at 6-8. In the present motion for summary judgment, Defendants argue Deputy Stroh is shielded from liability by qualified immunity "because clearly established law confirms that his actions were constitutionally permissible." Mot. at 15.

Under the Civil Rights Act, 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

The defense of "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." See Reichle v. Howards, 566 U.S. 658, 664 (2012) (citation omitted).

When considering a claim for qualified immunity, courts consider: (1) whether the facts show that the defendant violated a constitutional right and (2) whether the right was clearly established at the time of the defendant's purported misconduct. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). "[I]f the answer to either is 'no,' then the officers cannot be held liable for damages." Glenn v. Wash. Cty., 673 F.3d 864, 870 (9th Cir. 2011). Courts are not required to address the two inquiries in any particular order and may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

In cases involving the reasonableness of force by law enforcement officers, the Ninth Circuit has held that: "[b]ecause the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (quotation omitted).

## A.    Whether Plaintiff's Constitutional Rights Were Violated

Under the first prong of the qualified immunity test, the Court considers whether the facts shown "make out a violation of a constitutional right." Pearson, 555 U.S. at 232. "The use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures." Miller v. Clark Cty., 340 F.3d 959, 961 (9th Cir. 2003) (citations omitted). "Objectively unreasonable uses of force violate the Fourth Amendment's guarantee against unreasonable seizures." Lowry v. City of San Diego,

11

818 F.3d 840, 847 (9th Cir. 2016) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 394-95 (1989)).

In determining the reasonableness of a seizure effected by non-deadly force, Courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." <u>See Graham</u>, 490 U.S. at 396 (quotations omitted).

The excessive force analysis under <u>Graham</u> involves three steps. First, the Court assesses "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." <u>Miller</u>, 340 F.3d at 964. Second, the Court assesses "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> Third, the Court balances "the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." <u>Id.</u>

## 1. <u>Summary of Arguments</u>

In their Motion, Defendants argue Deputy Stroh's deployment of his canine partner and tactical decisions with respect to securing and controlling Plaintiff were objectively reasonable arguing that "[t]he bite here was similar to the bite deemed reasonable" by the Ninth Circuit in <u>Miller</u>. Mot. at 21, 23.

Under the <u>Graham</u> factors, Defendants argue Deputy Stroh's decision was "reasonably necessary" given the "strong countervailing government interests in safely arresting Plaintiff", noting: (1) the severity of Plaintiff's felony warrant and drug trafficking charge; (2) that "Plaintiff was not physically under control, was hiding in thick brush, ignored repeated announcements and commands, encountered and startled at least one homeowner"; (3) "a second fleeing suspect was still on the loose"; (4) "Plaintiff was actively evading law enforcement and until the end attempted to avoid arrest by flight";

12

and (5) that the deputies had already "attempted less forceful means to arrest Plaintiff." Id. at 23-27.

In his Opposition, Plaintiff argues "material questions of fact" regarding: (1) whether he "was actively or passively resisting prior to his arrest"; (2) his "physical ability, efforts, and willingness to comply"; (3) the "severity of the threat" he actually posed; (4) the "adequacy of police warnings"; (5) "whether Bubo bit multiple times and would not immediately release upon command"; and (6) the potential for less intrusive means of arresting him are "plainly in dispute" and prevent a summary judgment ruling. Opp. at 23.

Under the Graham factors, Plaintiff argues: (1) he was not wanted for a violent offense; (2) he did not impose an immediate threat to the safety of the officers given the "nature of the terrain," the lack of any threatening actions taken by him, and the minimal risk of ambush by a second suspect in his underwear running away from the officers; (3) he was not actively resisting arrest; (4) Defendants did not provide him with appropriate warnings and commands; and (5) a "minute or two of conversation" could have resulted in his "peaceful apprehension." Id. at 24-27.

In their Reply, Defendants argue: (1) Plaintiff's summary conclusion he did not pose an "immediate safety threat to the safety of the deputies" employs impermissible 20/20 hindsight analysis; (2) Plaintiff "actively evaded and attempted to avoid arrest"; (3) Plaintiff failed to "cite any evidence to dispute the fact that multiple warnings and canine announcements were made by law enforcement"; and (4) Plaintiff's suggestion that Deputy Stroh could have waited longer before deploying his canine partner would have "exponentially increased the risk that Plaintiff would escape capture, become desperate in resisting arrest, or that deputies would face an ambush." Reply at 5-9.

## 2. **Analysis**

### a. **Gravity of Intrusion on Plaintiff's Rights**

Under the first step of the Graham analysis, the Court assesses "the gravity of the particular intrusion on Fourth Amendment interests" by evaluating "the type and amount

13

of force inflicted." <u>Miller</u>, 340 F.3d at 964. Ninth Circuit precedent "establishes that characterizing the quantum of force with regard to the use of a police dog depends on the specific factual circumstances." <u>Lowry</u>, 858 F.3d at 1256.

The Ninth Circuit has found that the use of the bite-and-hold technique by a police canine constitutes a significant degree of force. <u>See</u> <u>Miller</u>, 340 F.3d at 964. The duration of the bite is also a factor in considering whether the force used was excessive. <u>See</u> <u>id.</u> at 964 (upholding District Court determination that the force used was "considerable" and "exacerbated by the duration of the bite" when deputy allowed canine to bite and hold suspect for an "unusually long time period"); <u>Watkins v. City of Oakland</u>, 145 F.3d 1087, 1093 (9th Cir. 1998) (the "excessive duration" of a bite "could constitute excessive force that would be a constitutional violation").

Here, Plaintiff was ordered to crawl out to the road while Deputy Stroh's police canine, Bubo, was still engaged with his arm. Mot., Ex. R at 2; Ex. D at 34:1-8. It is undisputed Plaintiff crawled approximately five to fifteen feet to the edge of the bushes, which took approximately 30-45 seconds, before Bubo was removed. Joint Statement at ¶ 40; Mot., Ex. D at 34:1-8, 34:15-19; Ex. M at 2, 4; Ex. N at 93:11-15, 96:10-25. From both Plaintiff's deposition and Deputy Stroh's report, Plaintiff had already complied with Deputy Stroh's command to show him his hands prior to being ordered to crawl out of the bushes with Bubo still engaged. Mot., Ex. R at 2; Opp., Ex. 5 at 101:17-102:16.

Viewing the facts in the light most favorable to Plaintiff: (1) Plaintiff's crawling movement caused Bubo to rip at his arm creating a "tug of war" between Plaintiff and Bubo; (2) Bubo was still attached while Plaintiff was being handcuffed; and (3) the officers could not initially get Bubo to release and his jaws had to be physically pried from Plaintiff's person. <u>See</u> Mot. Ex. M at 2, 4; Ex. N at 98:2-8; 99:4-13, 120:17-25; Opp., Ex. 5 at 102:4-22, 106:10-107:25; Ex. 10 at 18. Plaintiff alleges he was bitten not once, but at least six separate times and disputes whether Bubo was adequately trained. <u>See</u> Opp., Ex. 1 at 15:16-16:2; Ex. 8 at 130:17-132:4; Ex. 10 at 22, 27-28; Ex. 13 at 4; Ex. 19 at 2. It is undisputed Plaintiff sustained deep tissue wounds to his left arm that

14

required surgery and additional complications requiring additional surgeries. Joint Statement at ¶ 45.

For the above reasons, the Court concludes the intrusion to Plaintiff's Fourth Amendment rights was a significant one.

**b.** **Government Interests at Stake**

Under the second step of the <u>Graham</u> analysis, the Court assesses "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." <u>Miller</u>, 340 F.3d at 964 (citing <u>Graham</u>, 490 U.S. at 396).

First, the Court considers the severity of Plaintiff's crimes. Plaintiff was wanted on a felony arrest warrant for conspiracy to distribute methamphetamine. <u>See</u> Mot., Ex. C at 2. Plaintiff concedes this is a "serious offense." Opp. at 24. The government has an undeniable legitimate interest in apprehending criminal suspects and that interest is stronger when the criminal is suspected of a felony. <u>See</u> <u>Miller</u>, 340 F.3d at 964. This factor weighs in the government's favor.

Second, the Court considers whether Plaintiff posed an immediate threat to the officers' safety. The Ninth Circuit has stated this is "'the most important factor' under <u>Graham</u>[.]" <u>C.V. v. City of Anaheim</u>, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting <u>George v. Morris</u>, 736 F.3d 829, 838 (9th Cir. 2013)).

Defendants rely on the Ninth Circuit's decisions in <u>Mendoza v. Block</u>, 27 F.3d 1357 (9th Cir. 1994) and <u>Miller</u> to argue that Deputy Stroh's actions were objectively reasonable. Mot. at 22-28; Reply at 3. Although the circumstances in those cases are similar to the instant one, the Court finds that these cases differ in several key respects.

In <u>Mendoza</u>, the Ninth Circuit held it was objectively reasonable for deputies to deploy a canine against a suspect, Mendoza, that had robbed a bank, fled on car and by foot, and then crawled and hid under bushes on private property where he presented a danger to both deputies and the property owners. 27 F.3d at 1358-59, 1362-63. A radio

15

transmission warned the pursuing deputies that Mendoza might be armed. Id. at 1358. After the canine located Mendoza and engaged him, Mendoza was ordered to crawl out of the bushes during which he was still actively struggling. Id. at 1362-63. Once Mendoza stopped struggling and was handcuffed, the canine was ordered off him. Id.

In Miller, the Ninth Circuit found "objectively menacing circumstances" justifying the deployment of a canine against a felony suspect who was fleeing a traffic infraction, who had possessed a large knife only moments earlier and might have had mental health problems. 340 F.3d at 960-61, 965. The suspect, Miller, was hiding in a dark wooded area and the searching officers did not know where within these woods he was hiding before releasing their canine partner. Id. at 961.

Here, unlike in Mendoza and Miller, Defendants do not suggest there were any indications Plaintiff had a weapon beyond the fact that "a person involved in drug dealing is more prone to possess firearms." Mot. at 25. In this case, Plaintiff had no prior convictions involving violent crimes or weapon possession. Joint Statement at ¶ 5. The task force's operational plan listed: (1) "Unknown" as to whether there were weapons at the Residence; and (2) "No" as to whether Plaintiff was known for, or suspected of, violence. Id. at ¶¶ 5-6. Deputy Stroh testified he could not recall whether he had been told Plaintiff had a violent criminal history or arrests or convictions relating to weapons. Opp., Ex.1 at 79:24-80:15.[1]

Unlike the instant case, the Miller case did not involve the continued use of a canine where the suspect was ordered to crawl out of bushes with the police canine still engaged. Specifically, in Miller, the Court found it "important that [the officer] arrived on the scene soon after he heard Miller scream and that [the officer] commanded [the dog] to release Miller as soon as [the officer] determined that Miller was unarmed." Id.,

---

[1] Another officer on the scene, Agent Kenneth Harvey, testified that he had not told Deputy Stroh that contact with Plaintiff would lead to a violent contact. Mot., Ex. D at 45:7-10.

340 F.3d at 966 n. 12. Although the facts in <u>Mendoza</u> are closer to the instant case, in <u>Mendoza</u>, the suspect was still resisting when he was ordered to crawl out of bushes. Specifically, in <u>Mendoza</u>, the Court noted that "[Mendoza] had not been subdued when the dog bit him the second time. In fact, once he was out of the bushes, he struggled with the dog, causing the dog to shift its bite." 27 F.3d at 1362-63.

Based on Plaintiff's account of the events, Plaintiff was lying on his stomach with his arms straight out in front of him when he regained consciousness after falling while jumping a fence and crawling into a bush. He heard a command from an officer to show his hands to which he complied before Bubo was unleashed. Opp. at Ex. 5, 86:14-87:22, 88:19-89:12; 91:9-92:9. Deputy Stroh disputes Plaintiff showed him his hands before Bubo was engaged. Mot., Ex. N at 89:5-90:9; Ex. R at 2.

From both Plaintiff's deposition and Deputy Stroh's report, after Bubo was engaged, Plaintiff complied with Deputy Stroh's command to show him his hands and was nevertheless ordered to crawl out of the bushes with Bubo still engaged. Mot., Ex. R at 2; Opp., Ex. 5 at 101:17-102:16. Deputy Stroh contends Plaintiff's hands were buried in debris and that he could not see them. Mot, Ex. N at 90:24-91:9. Plaintiff disputes this fact. Opp. at Ex. 5, 164:17-25. Plaintiff also disputes the thickness of the bushes that would have prevented the deputies from seeing he was unarmed. <u>Id.</u>, 79:8-15.

It is undisputed Plaintiff made no attempt to flee the brush. <u>Id.</u> at ¶ 38. It is also undisputed that a second officer, Deputy Carlos, was covering Plaintiff with his gun drawn during the entire altercation. <u>Id.</u> at ¶ 34. Deputy Stroh testified Plaintiff was not using force to actively resist his arrest once Bubo was engaged. Mot., Ex. N at 130:18-25.

Accepting Plaintiff's version of the facts, it is possible a reasonable jury could find Plaintiff did not pose an immediate threat to the officers' safety, especially after Bubo was engaged and Plaintiff had complied with Deputy Stroh's instruction to show his hands. <u>See</u> <u>Chew v. Gates</u>, 27 F.3d 1432, 1441-42 (9th Cir. 1994) (rational jury could find suspect did not impose an immediate safety threat where defendants did not suggest

17

suspect engaged in any threatening behavior or did anything other than hide quietly). For the purposes of summary judgment, this factor weighs against Defendants.

Third, the Court considers "whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964. Here, it is undisputed Plaintiff fled from the agents executing his search warrant. Joint Statement at ¶¶ 10-12. With respect to whether he was attempting to evade arrest by flight when Bubo was released, the answer is yes and no. In a general sense, Plaintiff was still attempting to evade arrest. In more precise terms, his flight had terminated, at least temporarily, when Plaintiff jumped a fence, struck his head on the ground, crawled five to fifteen feet inside of bushes and then lost consciousness. Id. at ¶ 15. This factor favors Defendants. See Miller, 340 F.3d at 965-66; Chew, 27 F.3d at 1442.

The Court also looks to other relevant factors, including the availability of alternative means of capturing or subduing Plaintiff. See Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1092 (9th Cir. 2013) ("In evaluating objective reasonableness, [a court] often must look beyond Graham's enumerated factors and consider other elements relevant to the totality of the circumstances."). Although it is relevant if an officer could have used less forceful means, "the government need not show in every case that it attempted less forceful means of apprehension before applying the force that is challenged." Miller, 340 F.3d at 966.

Here, it is unclear here whether any less forceful means would have been feasible given the circumstances. Plaintiff does not support his conclusory argument that a "minute or two of conversation" could have resulted in his peaceful apprehension with any evidence. See Opp. at 18.

From the record, the task force agents established a perimeter to locate and apprehend Plaintiff. Joint Statement at ¶ 16. The first canine handler at the scene, Deputy Carlos, asserts he made two canine announcements from the location where Plaintiff was last seen, which was near the area where Plaintiff was ultimately found. Id. at ¶ 19. Deputy Stroh also made a canine announcement before releasing his police dog.

18

Id. at ¶ 32. Deputy Stroh asserts that he could not physically access Bubo or Plaintiff in the bushes where Plaintiff was located and Plaintiff still had not been searched for weapons. Id. at ¶ 36. Plaintiff's suggestion that Deputy Stroh could have waited longer would have required Deputy Stroh to continue to expose himself to an attack by a felony suspect that had not yet been searched for weapons.

The remaining alternative offered is that Deputy Stroh should have immediately removed the canine once Plaintiff showed him his hands and not allowed the attack to go on. Opp., Ex. 7 at 179:15-180:8; Ex. 10 at 12. This assertion however has less to do with alternatives than it does "gauging the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." Koistra v. Cty. of San Diego, 310 F. Supp. 3d 1066, 1080 (S.D. Cal. 2018) (quotations omitted).

However, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that the deputies could have employed less intrusive means by releasing Bubo's hold on Plaintiff once he had complied with orders to raise his hands, rather than ordering him to crawl out to the road. See Koistra, 310 F. Supp. 3d at 1080.

### c. **Balancing**

The Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." Miller, 340 F.3d at 964.

Here, it was reasonable for Defendants to deploy a "bite and hold" canine to apprehend a concealed subject who was a wanted felon fleeing on foot and hiding in brush who had been not been searched for weapons, was nonresponsive to several canine announcements, who potentially presented a danger to the public, and where a second fleeing suspect was still on the loose.

The remaining question is whether the continued use of the canine following Plaintiff's compliance with Deputy Stroh's instruction to show his hands and ordering the Plaintiff to crawl out of the brush with the canine still engaged was reasonable.

On this point, the <u>Graham</u> factors do not all support either side, and the most important factor – the absence of an immediate safety threat – cuts in Plaintiff's favor. It is undisputed Plaintiff made no attempt to flee the brush. Joint Statement at ¶ 38. It is also undisputed that during the entire altercation, Plaintiff was being covered by another officer with his gun drawn and pointed at Plaintiff. <u>Id.</u> at ¶ 34. The severity of Plaintiff's injuries and disputes regarding whether Plaintiff's hands could be seen create issues of fact on whether Plaintiff suffered an unnecessary, prolonged attack by the canine. A reasonable jury could find that ordering Plaintiff to crawl out of the brush with the canine still engaged after Plaintiff had already complied with an instruction to show his hands was unreasonable.

Accordingly, viewing the facts in the light most favorable the Plaintiff, the Court concludes: (1) employing a police canine to apprehend Plaintiff was reasonable but (2) there remains an issue of fact as to whether the duration and extent of Deputy Stroh's use of the canine was an unreasonable use of force.

**B.   Whether The Right Was Clearly Established At The Time Of Deputy Stroh's Purported Misconduct**

Under the second prong of the qualified immunity test, the Court must determine whether Plaintiff's rights against excessive force were clearly established at the time of the alleged misconduct. <u>See</u> <u>Pearson</u>, 555 U.S. at 232.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). "[T]he plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" <u>LSO, Ltd. v. Stroh</u>, 205 F.3d 1146, 1157 (9th Cir. 2000).

The Supreme Court recently reiterated the principle that "'clearly established law' should not be defined 'at a high level of generality.'" <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)). Instead, "the clearly

16cv1094-LAB-LL

established law must be "particularized" to the facts of the case." <u>White</u>, 137 S. Ct. at 552.

To find that the law is clearly established, the Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." <u>S.B. v. Cty. of San Diego</u>, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting <u>Mullenix v. Luna</u>, 136 S.Ct. 305, 308 (2015)).

"The Supreme Court has explained that, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances,' and has rejected, 'a requirement that previous cases be fundamentally similar' to the facts at issue in a suit." <u>Young v. City of L.A.</u>, 655 F.3d at 1167 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)).

### 1. <u>Summary of Arguments</u>

Under the second prong of the qualified immunity analysis, Defendants argue Plaintiff's rights were not clearly established at the time of the conduct at issue. Mot. at 18-21. Specifically, Defendants argue that under the "dispositive circumstances" of the case, "no precedent placed Bubo's deployment and alleged need to call Bubo off of the bite beyond debate to every reasonable duty." <u>Id.</u> at 11-12. Defendants specifically cite to the Ninth Circuit's decisions in <u>Mendoza</u> and <u>Miller</u> and the Eleventh Circuit's decision in <u>Jones v. Fransen</u>, 857 F.3d 843 (11th Cir. 2017). <u>Id.</u> at 18-19. Defendants further distinguish the instant case from the Ninth Circuit's decision in <u>Watkins,</u> arguing that <u>Watkins</u> is "factually distinguishable" and does not meet the "high threshold of 'clearly established law[.]'" <u>Id.</u> at 20-21.

In his Opposition, Plaintiff argues that it is "clearly established that where there is no need for force, any force used is unreasonable" but that "where there is a need for force, the force must be reasonable in light of the circumstances." Opp. at 32-33. Plaintiff also argues Deputy Stroh's actions were actionable under clearly established law given the: (1) "excessive duration" of the bite; (2) "improper encouragement" by

officers to continue the attack; and (3) "failure to release." Id. at 33-34. Plaintiff cites to a series of cases allegedly supporting each argument. Id. at 32-34.

Plaintiff distinguishes the instant case from the Ninth Circuit's Mendoza and Miller decisions, arguing in both those cases, "the dogs were used to apprehend suspects known to be dangerous while the suspects were still actively evading arrest." Id. at 34.

In their Reply, Defendants argue that Plaintiff's list of cases fall short of "meeting his burden of demonstrating infringement of a clearly established right." Reply at 3. Specifically, Defendants argue the cases Plaintiff cites are "factually distinguishable and do not define any clearly established law in this case." Id. at 4. In contrast, Defendants argue that the Ninth Circuit's decisions in Mendoza and Miller provide "factually analogous circumstances that clearly establish the lawfulness of deploying a police canine to bite and hold" in the circumstances in this case. Id. at 4.

### 2. **Analysis**

The Court has already ruled that the release of Deputy Stroh's canine partner was reasonable. Prior to the time of the incident, the use of police canines to search for and apprehend fleeing or concealed suspects was "long-standing and widespread[.]" Koistra, 310 F. Supp. 3d at 1083 (citing Chew, 27 F.3d at 1447). At the time the incident occurred, it was not clearly established that it was unlawful to use police dogs to search for and apprehend concealed suspects by biting and seizing them. See Chew, 27 F.3d at 1449.

Accordingly, under the second prong, the Court looks to whether it was clearly established that it was unlawful to continue to use a police canine to effectuate a seizure by ordering the suspect to crawl five to fifteen feet to the edge of bushes with a canine still engaged after the suspect already complied with an instruction to show his hands.

Plaintiff's first argument—that it was "clearly established that where is no need for force, any force used is unreasonable" but "where there is a need for force, the force must be reasonable in light of the circumstances" (Opp. at 32-33)—defines the "clearly established right" as simply the right to be free from excessive force and is too general.

22

See City of Escondido v. Emmons, No. 17-1660, 2019 U.S. LEXIS 11, at *7 (Jan. 7, 2019); Plumhoff v. Rickard, 572 U.S. 765, 779 (2014) (instructing courts "not to define clearly established law at a high level of generality . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.") (internal citations omitted).

Plaintiff argues secondly that the excessive duration of the bite, improper encouragement by officers, and failure to release is actionable. In support, Plaintiff cites to: (1) the Ninth Circuit's decisions in Watkins, Chew, and Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005); (2) the Sixth Circuit's decision in Campbell v. City of Springboro, Ohio, 700 F.3d 779 (6th Cir. 2012); (3) the Eleventh Circuit's decision in Priester v. City of Riviera Beach, 208 F.3d 919 (11th Cir. 2000); and (4) this District's decision in Koistra. Opp. at 32-33.

Of these, the Court finds the Ninth Circuit's decision in Watkins and this District's decision in Koistra most instructive.[2] In Watkins, officers responded to a silent alarm at a commercial warehouse. 145 F.3d at 1090. The officers established a perimeter after

───────────────

[2] Plaintiff fails to provide any analysis as to how the Priester, Campbell, or Smith cases are factually similar to the instant one and the Court does not find that they are.

In Priester, the Eleventh Circuit found no preexisting case law was necessary for it to be clearly established that the level of force used was not reasonable where "[defendant] ordered and allowed his dog to attack and bite Plaintiff; threatened to kill Plaintiff when Plaintiff kicked the dog in an effort to resist the unprovoked attack; and let the dog attack Plaintiff for at least two minutes." 208 F.3d at 927.

In Campbell, the Sixth Circuit found there was ample evidence to suggest that an officer acted contrary to clearly established law where an inadequately trained police dog was deployed without warning against two suspects who were not actively fleeing and showed no ability to evade police custody. 700 F.3d at 788-789.

In Smith, the Ninth Circuit did not address or resolve the issue of qualified immunity. 394 F.3d at 704, n. 7.

seeing a person running within the building. Id. There was no evidence as to whether the person was armed. Id. Canine announcements warnings were given twice before an officer released his canine partner into the warehouse to search for the suspect. Id.

The canine found Watkins hiding in a car and engaged him. Id. Upon arriving at the scene, the officer did not immediately call his canine off of Watkins. Id. Instead, he ordered Watkins to show his hands. Id. Watkins, who was recoiling from the dog's bite, failed to comply. Id. The officer then pulled Watkins out of the car onto the ground. Id. The canine continued to be engaged until Watkins complied with the officer's orders to show his hands, while he was surrounded by officers with their guns drawn. Id.

In evaluating these facts, the Ninth Circuit held no clearly established law would have alerted the officer that using a police dog to search for Watkins was unconstitutional. Id. at 1092. However, the Ninth Circuit distinguished the initial use of the police canine from the question of whether "the duration and extent of force applied in effecting arrest after the officers caught up with [the police canine] amounted to an unconstitutional application of force." Id. at 1093. In addressing this question, the Ninth Circuit held that it was clearly established that "excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation." Id.

In Koistra, a multi-agency task force executed an arrest warrant for a suspect who was spending the night at an acquaintance, Koistra's house. 310 F. Supp. 3d at 1071. The task force setup a perimeter and made several canine announcements. Id. at 1071-72. Koistra believed officers were present because she had violated the conditions of her parole and hid in a closet in her bedroom. Id. at 1073. A team of officers with a police canine lined up at the front door of the residence and made multiple loud verbal commands before entering and clearing the house. Id.

Based on Koistra's account of the facts, when the officer and police canine came into the bedroom she put her hands into the air and stated "I'm unarmed." Id. at 1074. The canine bit Koistra's fingers, arm, mouth, both sides of her face, back of her head,

broke her jaw, and pulled her out of the bedroom into the living room for a distance of about twelve feet before being physically pulled off.  Id. at 1074.  When she was in the living room, the officers yelled a command at the canine and it bit Koistra again.  Id. After that bite, the officer grabbed the canine by his head.  Id.

In Koistra, this District found it was clearly established that "a canine officer cannot continue to use canine force against someone, like Koistra, who has surrendered by putting her arms up and asserted she was unarmed after she heard [the officer] tell her to come out."  Id. at 1084.

Conversely, Defendants cite to the Ninth Circuit's Mendoza and Miller decisions to argue that the law regarding the unlawfulness of deploying Bubo against Plaintiff was not clearly established.  As discussed above however, the key factual differences in those cases do not support Defendants' assertion that qualified immunity applies here, at least as to Deputy Stroh's continued use of his police canine after Plaintiff complied with the instruction to show his hands, viewing the facts in the light most favorable to Plaintiff.

Defendants also cite to the Eleventh Circuit's decision in Jones.  In that case, the suspect broke into an ex-girlfriend's apartment and fled from police into a "steep ravine pond area with high concrete walls, boulders and vegetation."  857 F.3d at 848.  The court found that releasing a police canine was reasonable where an officer "could have been concerned . . . about entering the heavy brush to apprehend [the suspect] and being met by a potential ambush."  Id. at 854.

Again, while the Jones case supports Deputy Stroh's use of a police canine to search for and apprehend Plaintiff, it does not support Deputy Stroh's continued use of canine force.  With regards to this prolonged use of force, Mendoza, Watkins and Koistra provide notice that an officer cannot continue to use canine force against someone who has surrendered.

Here, viewing the facts in the light most favorable to Plaintiff, Plaintiff was ordered to crawl from the brush after Plaintiff had already complied with an instruction to show his hands with the canine still engaged on his person.  Mot., Ex. R at 2; Opp., Ex. 5

at 101:17-102:16.  Plaintiff disputes whether Plaintiff's hands were visible and whether the thickness of the bushes would have prevented the deputies from seeing that he was unarmed.  Opp, Ex. 5 at 79:8-15.  A reasonable jury could conclude Plaintiff was no longer resisting when ordered to crawl from the brush.  Under these circumstances, the Court concludes Defendants are not entitled to a qualified immunity defense on the duration and extent of Deputy Stroh's use of his canine partner.

For these reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **DENIED** as to Deputy Stroh's continued use of his canine partner.

## C. <u>State Law Claims</u>

Plaintiff also alleges state law claims of battery and negligence against: (1) Deputy Stroh directly and (2) the County under a vicarious liability theory pursuant to California Government Code Section 815.2.  ECF No. 1 at 8-10; Opp. at 35.  Defendants argue Plaintiff's state law claims are barred as to Deputy Stroh and the County because Plaintiff cannot prove unreasonable force was used against him.  Mot. at 28; Reply at 9-10.  Plaintiff asserts his "state law claims are based upon the same facts as the § 1983 claims" and "should be resolved identically."  Opp. at 35.

To assert a claim for battery against a police officer, Plaintiff must prove the officer used unreasonable force.  <u>See</u> <u>Edson v. City of Anaheim,</u> 63 Cal. App. 4th 1269, 1273 (1996) ("[A] prima facie battery is not established unless and until plaintiff proves unreasonable force was used.").  Likewise, "in order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury."  <u>Hayes v. Cty. of San Diego</u>, 57 Cal. 4th 622, 629 (2013) (quotations omitted).

California Government Code Section 815.2 provides that a public entity may be vicariously liable for injuries "proximately caused by an act or omission of an employee of the public entity within the scope of his employment[.]"  Cal. Gov't Code § 815.2(a).  However, a government entity "is not liable for an injury resulting from an act or

26

omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b). "Under California law, the county's immunity depends upon whether the police officers are immune." Robinson v. Solano Cty., 278 F.3d 1007, 1016 (9th Cir. 2002).

Here, because the Court concluded there is an issue of fact as to whether Deputy Stroh's continued use of his police canine was reasonable, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to on these causes of action be **GRANTED** as to Deputy Stroh's initial use of his canine partner but **DENIED** as to his continued use of canine force to effectuate Plaintiff's arrest. See Blankenhorn v. City of Orange, 485 F.3d 463, 487 (9th Cir. 2007) (holding that defendants were not entitled to summary judgment on plaintiff's state law claims where they were not entitled to summary judgment on plaintiff's unlawful force claim under § 1983).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) **GRANTING IN PART** and **DENYING IN PART** Defendants' Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than February 6, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than February 20, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: January 23, 2019

Honorable Linda Lopez
United States Magistrate Judge