# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. HARTSELL,<br><br>         Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, et al.<br><br>         Defendants. | CASE NO. 16cv1094-LAB (JMA)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION [Dkt. 64]** |

  In 2015, San Diego County Sheriff's deputies used a police dog to seize and retrieve a suspect, Plaintiff Michael Hartsell, who had fled into a thicket of bushes during the chase. During the encounter with Hartsell, the dog bit him multiple times, leading to severe injuries to his arm that necessitated a series of surgeries. Hartsell brought this suit alleging that the use of the police dog was an unreasonable use of force in violation of his Fourth Amendment rights and that, as a result, the officers were liable for his injuries. Defendants moved for summary judgment on the grounds that the force used was reasonable and that their actions are shielded by qualified immunity. Presently before the Court is Magistrate Judge Linda Lopez's Report and Recommendation ("R&R"), which recommends that Defendants' motion be granted in part and denied in part. Dkt. 64. Defendants have objected. Dkt. 66. The Court has reviewed *de novo* the portions of the R&R to which objections have been made and, for the reasons below, **ADOPTS IN FULL** the well-reasoned R&R.

## BACKGROUND

The R&R lays out the facts at issue here, so the Court does not repeat them. The gist of the case is that while executing a search and arrest warrant, the Defendant-deputies pursued the fleeing Hartsell through a residential neighborhood and into a thicket of bushes. Hartsell, who had fallen over a fence and struck his head prior to entering the bushes, was dazed and did not immediately respond to the deputies' commands to exit the bushes. Deputy Sheriff Trenton Stroh released his canine, Bubo, to retrieve Hartsell, who crawled "five to fifteen feet" out of the bushes with Bubo latched onto his arm all the while. Bubo continued to "bite-and-hold" after Hartsell had complied with the instructions to show his hands and even after Hartsell had fully exited the bushes and was within the control of the officers.

Defendants argue that summary judgment is warranted because the use of Bubo was reasonable and that their actions are shielded by qualified immunity. Judge Lopez's R&R recommends that Defendants' motion for summary judgment be granted in part and denied in part. There is little dispute that the initial use of the dog to retrieve Hartsell was reasonable, and the R&R recommends that summary judgment be granted in Defendants' favor as to that initial use of force. But, according to the R&R, a reasonable jury could find that the *continued* use of Bubo once Hartsell complied with the officers' instructions to show his hands was unreasonable and warranted the denial of summary judgment. Further, based on established Ninth Circuit precedent, the R&R held that a prohibition against using a police canine on a surrendering suspect was "clearly established" and warranted a denial of qualified immunity to the Defendants.

## ANALYSIS

Defendants object to both the denial of qualified immunity and the finding that the continued use of Bubo was not, as a matter of law, reasonable. Because both questions largely turn on the interpretation of a handful of Ninth Circuit cases involving the use of police dogs, the Court takes these objections together.

Defendants' primary contention is that the R&R erred because it did not specifically define the "clearly established" right at issue. The R&R presented the question as follows: "whether it was clearly established that it was unlawful to continue to use a police canine to effectuate a seizure by ordering the suspect to crawl five to fifteen feet to the edge of the bushes with a canine still engaged after the suspect already complied with an instruction to show his hands." Dkt. 64 at 22. The R&R answered that question in the affirmative and denied Defendants qualified immunity as a result. In Defendants' view, this framing lacks enough "context and factual specificity . . . to provide guidance and notice to law enforcement to understand what exactly is clearly unconstitutional." Objection, Dkt. 66, at 4. The Court disagrees. This framing is consistent with Ninth Circuit precedent recognizing that the continued use of a police canine becomes unreasonable once it is clear the suspect is surrendering and does not pose a safety threat to the officers.

The Ninth Circuit first addressed the reasonableness of the use of police canines in *Mendoza v.* Block, 27 F.3d 1357 (9th Cir. 1994), a case that bears striking resemblance to the one currently before the Court. In that case, the court granted the officer qualified immunity but noted:

> We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a "weapon" might become unlawful. For example, no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy sics a canine on a handcuffed arrestee who has fully surrendered and is completely under control. *Id.* at 1362.

From this common-sense proposition that it is unreasonable to sic a police dog on a handcuffed suspect, the Ninth Circuit in subsequent cases extended the rule to prohibit the use of a police dog to bite suspects who are not in complete custody but are nonetheless attempting to surrender and otherwise pose no safety risk to the officers. In *Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994), for example, the Ninth Circuit recognized

that where a subject poses no credible safety threat to the officers, the use of a canine to apprehend him may be unreasonable where other avenues of apprehension are possible. *See id.* at 1442-43 ("[T]he most important factor—the absence of an immediate safety threat—cuts strongly in [Plaintiff's] favor . . . . Such a record does not render reasonable as a matter of law the considered judgment to unleash a German Shepherd trained to seize suspects by 'biting hard and holding,' by mauling and sometimes seriously injuring them."). Finally, in *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087 (9th Cir. 1998), the court explicitly recognized that the reasonable use of a canine may become *un*reasonable if allowed to go on longer than necessary. Specifically, in affirming the district court's denial of qualified immunity, *Watkins* held that "it was clearly established that *excessive duration of the bite* and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation." *Id.* at 1093 (emphasis added). In short, the R&R did not err in determining that it was clearly established prior to the incident in question that the extended use of a police canine to "bite-and-hold" a suspect who is surrendering and does not pose a safety risk to the officers may constitute a constitutional violation.

      Other Ninth Circuit cases outside the qualified immunity context also support this conclusion. In *Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc), a case considering municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 662 (1978), the police officers responded to a burglar alarm and released a police dog into the building once they discovered the back door was propped open, reasoning that the burglar was still at large inside the building. The dog began to bite an intoxicated individual who had passed out on a couch, but was called off almost immediately, leaving the individual with only minor injuries. While the court found that this use of force was reasonable, the case illustrates the distinction between the use of a dog when an officer is trying to locate a potentially dangerous suspect and when the officer has located and discerned that a surrendering suspect poses no safety risk. The case distinguished between situations in which the officer "can observe whether th[e] suspect

is complying or resisting" and those situations in which the suspect remains hidden and at large, noting that "where a suspect passively resists arrest, a lesser degree of force is justified compared to situations in which the suspect actively resists arrest." *Lowry*, 858 F.3d at 1258 (citing *Glenn v. Washington Cty.*, 673 F.3d 864, 876 (9th Cir. 2011)). Indeed, in dissent, Judge Thomas specifically noted that established precedent "recognize[s] that the *manner* in which bite-and-hold force is employed could be unconstitutional in a particular case." *Id.* at 1267 (Thomas, J., dissenting) (citing *Watkins*, 145 F.3d at 1093; *Mendoza*, 27 F.3d at 1362) (emphasis in original).

Defendants argue that the R&R erred in not giving proper weight to the Ninth Circuit's decision in *Mendoza*, a case that, as discussed above, granted qualified immunity in a situation similar to this one. In that case, the officers released a police dog to track a suspect they believed to be armed. *See Mendoza*, 27 F.3d at 1358-59. Once the dog located the suspect in bushes, the officers ordered the still-struggling Mendoza to crawl towards them. *Id.* Mendoza continued battling the dog and the officers once he was in the open, going so far as to swing an arm at one of the deputies. *Id.* The Ninth Circuit affirmed the district court's decision that the continued use of the police dog to subdue the suspect was reasonable given, among other things, the officers' belief that the suspect was armed and his continued struggle with the dog and the officer.

But the critical distinction between this case and *Mendoza* is the degree of resistance on the part of the suspect. In *Mendoza*, the suspect fought with the police canine while in the bushes and continued to do so even once the dog had dragged him out into the open. Given this struggle, it was reasonable for the officers to assume that the continued bite-and-hold was necessary for their protection. There's no such countervailing factor here. Hartsell had already complied with the deputies' commands to show his hands prior to crawling out of the bushes, and there is no allegation he fought

///
///
///

with the dog or in any way indicated that he posed a specific risk to the officers.[1] The dog continued the bite-and-hold until well *after* Hartsell had exited the bushes, it was clear he was unarmed, and he was within the officers' control. *See* Opp., Ex. 1 at 96:10-99:7; Opp., Ex. 5 at 101:17-103:8. Indeed, according to Hartsell, the officers were eventually forced to "pry[ the dog's] jaws open" because it would not respond to their verbal commands to release. Opp., Ex. 5 at 106:19-107:25. Accepting Hartsell's account as true, which the Court is required to do at this stage, summary judgment must be denied because a reasonable jury could conclude that the officers' actions were unreasonable in light of the clearly established prohibition against prolonged dog bites. *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998). This conclusion comports more generally with the Ninth Circuit's mandate that summary judgment should be used sparingly in excessive force cases like this one. *See Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.").

Finally, the Court also rejects Defendants' contention that the R&R improperly relied on the recent district court decision in *Koistra v. Cty. of San Diego,* 310 F.Supp.3d 1066 (S.D. Cal. 2018). In that case, the court found a deputy's initial use of a police dog to locate the suspect was reasonable but that the continued use of that dog became unreasonable once the suspect "had surrendered by putting her arms up." *Id.* at 1084. It's true that *Koistra* cannot serve as "clearly established law" for purposes of qualified

---

[1] Of course, all fleeing suspects pose some risk of harm to the officers, who are generally unaware of whether the suspect has something (literally or figuratively) up his sleeve. The point here is that there was no indication that this particular suspect, who was in his underwear at the time of the event, posed a safety threat to the officers, especially once he showed his hands and complied with the officers' commands. It is also worth noting that the task force's operational plan for executing the warrant stated that Hartsell was not known for, or suspected of, violence.

immunity here because it post-dates the incident in question and, in any event, is non-binding. The point of the R&R's discussion of *Koistra*, however, was not that the case itself serves as clearly established law, but that it applies the same Ninth Circuit case law being considered here to reach a similar conclusion: the reasonable use of a police dog to locate or subdue a suspect becomes unreasonable once that suspect has indicated that they are surrendering and otherwise pose no safety risk to the officers.

## CONCLUSION

The R&R is **ADOPTED IN FULL**.[2] Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, as set forth in the R&R.

**IT IS SO ORDERED**.

Dated: March 4, 2019

*Larry A. Burns*
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge

---

[2] Because Defendants make only passing reference to the R&R's treatment of Plaintiff's state law causes of action and do not address at all the R&R's various evidentiary rulings, the Court does not address these issues.