UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. HARTSELL,<br><br>  Plaintiff,<br><br>   v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO COUNTY DEPUTY SHERIFF TRENTON STROH; DOES 1-15,<br><br>  Defendants. | No. 16-cv-1094-LAB-LL<br><br>**ORDER:**<br><br>1) **DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW [Dkt. 228];**<br>2) **DENYING MOTION FOR A NEW TRIAL [Dkt. 228]; and**<br>3) **GRANTING MOTION TO RETAX COSTS [Dkt. 236]** |

Shortly before dawn on May 21, 2015, a multi-agency, DEA-organized narcotics task force attempted to serve a search warrant at Plaintiff Michael Hartsell's home. The task force, aware that Hartsell was a convicted felon with a lengthy criminal history, tried to gain entry through the locked gate. Hartsell's friend, Michael Ferguson, saw the task force from the bedroom and warned Hartsell. Both fled through the back door, with the task force in pursuit.

Task force members eventually found Hartsell lying prone in a thicket. After Hartsell failed to respond to several warnings, Defendant Deputy Trenton Stroh ordered his dog, Bubo, into the bushes to bite and hold Hartsell.

As the Court ruled at the summary judgment stage, "deploy[ing] a 'bite and hold' canine to apprehend a concealed subject who was a wanted felon fleeing on foot and hiding in brush who had not been searched for weapons, was nonresponsive to several canine announcements, who potentially presented a danger to the public, and where a second fleeing suspect was still on the loose" is a reasonable use of force as a matter of law. (Dkt. 64; Dkt. 70 (adopting Report and Recommendation in full).)  But the parties went to trial over what happened next: without directing Bubo to release Hartsell, Stroh ordered Hartsell to crawl the five to fifteen feet out of the bushes.  Hartsell complied, dragging along Bubo, whose jaws were still clamped down on Hartsell's arm.  Hartsell argued that this direction, and the failure to first command Bubo to release him, was an unreasonable use of force.

The jury found in favor of Stroh and his co-defendant, the County of San Diego, on each of Hartsell's three claims.  Hartsell now moves for judgment as a matter of law or, in the alternative, a new trial, arguing that a reasonable jury couldn't have found in Defendants' favor and, at a minimum, the clear weight of the evidence favored Hartsell, so he should have another chance at finding a jury that might give him a favorable verdict. (Dkt. 228.)  But because the Court finds that the weight of the evidence established that Stroh's use of force was reasonable, both motions are **DENIED**.

Hartsell also asks the Court to deny taxation of costs. (Dkt. 236.)  The Court's discretion to grant or deny such a motion is limited, and where taxation of costs would render a party indigent, the Court must grant the motion.  Because the $15,115.55 taxed by the Clerk's order is beyond Hartsell's ability to pay, that motion is **GRANTED**.

# DISCUSSION

## I. Applicable Standards

Motions for judgment notwithstanding the verdict under Fed. R. Civ. P. 50 and motions for a new trial under Fed. R. Civ. P. 59 both require the Court to evaluate the jury's verdict in light of the evidence adduced at trial. Under Rule 50, the movant must show that "a reasonable jury [didn't] have a legally sufficient evidentiary basis to find for the [non-movant] on [an] issue." Fed. R. Civ. P. 50(a), (b). Rule 59 permits the Court to order a new trial for several reasons including, as Hartsell argues here, that the jury's verdict was "against the clear weight of the evidence . . . or to prevent . . . a miscarriage of justice." *United States v. 4.0 Acres of* Land, 175 F.3d 1133, 1139 (9th Cir. 1999); (Dkt. 228-1 at 15). But "[i]t is not the courts' place to substitute our evaluations for those of the jurors." *Union Oil Co. of Cal. V. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003). The weight of the evidence must clearly contradict the verdict—the Court can't order a new trial "simply because it would have arrived at a different verdict." *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007).

## II. The Jury's Verdict Wasn't Contrary to the Clear Weight of the Evidence

Hartsell alleged three claims against Defendants: violation of Hartsell's Fourth Amendment rights via 42 U.S.C. § 1983; battery; and negligence. Each of these required him to prove that Stroh's use of force was unreasonable under the circumstances. (*See* Dkt. 221, Court's Instruction Nos. 14, 16, 17.)

The use of force at issue wasn't whether Stroh should have directed Bubo to bite and hold—before trial, the Court held that to be reasonable as a matter of law. (Dkt. 64; Dkt. 70.) Instead, the jury considered whether Stroh used unreasonable force in directing Hartsell, while being held by Bubo in the bushes, to crawl out without first verbally commanding Bubo to release the bite. This reasonableness determination required the jury to take into account all the circumstances known

to Stroh, including, among others: the nature of the crime; whether Hartsell or his accomplice who fled the scene posed an immediate threat to the safety of the officers or to others; and the availability of alternative methods to take Hartsell into custody. (Dkt. 221, Court's Instruction No. 15.); *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

Hartsell contends that the evidence made it plain that Stroh's directive to him to crawl out of the bushes with Bubo still engaged was unreasonable. Hartsell had shown his hands, was unlikely to be able to conceal a weapon in his clothing because he was in his underwear, wasn't known for or suspected of violence, and had a loaded gun trained on him throughout. These circumstances weigh in favor of minimizing the amount of force used.

But they don't account for every relevant circumstance. Most critically, Stroh still needed to disengage Bubo from Hartsell's arm, and his options for doing that were limited. The parties agree that Stroh couldn't safely enter the bushes to physically remove Bubo. (*See* Dkt. 238 at 5 ("Plaintiff agrees that officers should not have gone into the bushes.")). Stroh could either order Hartsell to come out, with Bubo remaining on the bite until he could be removed physically, or he could give a verbal release command from a distance.

The evidence doesn't clearly establish that the latter would have been both effective and a lesser use of force. First, the order might not have been effective. As Hartsell acknowledges, once he crawled out of the bushes, "Bubo [did] not immediately release despite commands to do so." (Dkt. 228-1 at 10.) Instead, Bubo released only when Stroh physically removed him. (Dkt. 228-3 at 3.) And while Stroh could have tried a verbal-only command, doing so risked using still greater force. Stroh, Deputy Brandon Carlos, and Lieutenant Jacob Pavlenko all offered evidence that officers (including Stroh and Carlos) are trained that the safest practice is to release a biting dog physically while giving a simultaneous command because giving the verbal command alone risks a second bite.

(Dkt. 232 at 151:7–15, 153:3–11, 191:4–23; Dkt. 231 at 56:5–17.)  And Stroh testified that a second bite would be more likely than the first to cause a serious or lethal injury.  (Dkt. 232 at 151:10–15.)

The jury heard substantial evidence supporting a conclusion that a reasonable officer with Stroh's training would have determined that the least dangerous method of removing Hartsell from the bushes was to order Hartsell to crawl out with Bubo still engaged, and that therefore Stroh's decision to take that course wasn't an unreasonable use of force.  Considering that evidence, the Court cannot find that the clear weight of the evidence contradicts the jury's verdict in Defendants' favor, nor that the verdict constituted a miscarriage of justice.  The motions for judgment as a matter of law and for a new trial are both **DENIED**.

### III.    Awarding Costs in this Case Would Render Hartsell Indigent

Fed. R. Civ. P. 54(d)(1) establishes a presumption that the prevailing party will be permitted to recover its costs.  The Court has limited discretion to set this presumption aside in "extraordinary" circumstances where "it would be inappropriate or inequitable to award costs." *Ass'n of Mexican-American Educators v. California*, 231 F.3d 572, 593 (9th Cir. 2000).  But courts abuse that discretion in refusing to set aside a cost award where there is evidence that the award would render indigent the party bound to pay it. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1080 (9th Cir. 1999); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1248 (9th Cir. 2014) (following *Stanley*).

Hartsell asks the Court to set aside the clerk's order taxing costs of $15,442.05 because of the disparity between his resources and the County's, potential chilling effects on civil rights litigation, and issues of substantial public importance in this case.  This case doesn't involve issues of sufficient interest to the public to decline to tax costs—Hartsell didn't challenge any generally applicable policy, and the reasonableness inquiry at the heart of the case is highly fact-sensitive.  Nor are these costs so high that they are likely to have a substantial

1 chilling effect on potential plaintiffs with the ability to pay. But financial information provided by Hartsell establishes that awarding costs to the County is likely to render Hartsell indigent. Between July and December 2020, his income was only $8,000, which he attests is "just enough to pay monthly expenses," and he has no real property or savings that he could use to satisfy the debt. (Dkt. 236-1.) Hartsell's Motion to Retax Costs is **GRANTED**—the Court declines to award costs to Defendants.

**IT IS SO ORDERED.**

Dated: September 17, 2021

*Larry A. Burns*
HON. LARRY A. BURNS
United States District Court Judge